**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Gary and Caryl Luis, Stephanie Edwards and Murray MacLeod, Mary Moravec, and Judith and Delton Nack, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RBC Capital Markets, LLC,<br><br>Defendant. | Case No. 16-cv-00175 (SRN/JSM)<br><br>**MEMORANDUM OPINION AND ORDER** |

Charles E. Scarlett and Scott D. Hirsch, Scarlett & Hirsch, P.A., 7777 Glades Road, Suite 200, Boca Raton, Florida 33434, Daniel E. Gustafson, Daniel C. Hedlund, David A. Goodwin, and Eric S. Taubel, Gustafson Gluek PLLC, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, for Plaintiffs.

Alex J. Kaplan, Andrew W. Stern, and Rituraj K. Ghai, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, Clifford M. Greene and Sybil L. Dunlop, Greene Espel PLLP, 222 South Ninth Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

---

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This action arises from allegations that Defendant RBC Capital Markets, LLC ("RBC") improperly marketed and sold certain investment products to Plaintiffs between January 1, 2008 and the present date, in violation of Minnesota statutory and common law. In response, RBC now moves the Court to dismiss the Complaint, arguing that

Plaintiffs' claims are precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), or, in the alternative, that they are pleaded with insufficient particularity to meet the heightened standards of Fed. R. Civ. P. 9(b). For the reasons set forth below, the Court agrees with RBC that Plaintiffs' claims are barred by SLUSA. Accordingly, RBC's Motion to Dismiss [Doc. No. 21] is granted in part, and denied as moot in part, and Plaintiffs' Complaint [Doc. No. 1] is dismissed.

## II. BACKGROUND

### A. The Parties

Plaintiffs in this matter are seven retired and semi-retired individuals who invested in proprietary reverse convertible notes ("RCNs") sold by RBC, and suffered significant losses when those notes declined precipitously in value. (Compl. ¶¶ 13-17.) They commenced this action on behalf of themselves and the following putative class:

> [A]ll persons and entities to whom Defendant sold [RCNs] from January 1, 2008 to the present, whose risk tolerance did not permit investment in reverse convertible notes and whose stated and written instructions to RBC did not authorize selling put options.

(*Id.* at ¶ 79.) Plaintiffs estimate that the putative class may ultimately consist of "several thousand" individuals. (*Id.* at ¶ 82.)

Defendant RBC is a Minnesota limited liability company and a registered broker-dealer, which acted as the agent for the sale of the RCNs underlying this dispute. (*Id.* at ¶

17; Kaplan Aff. [Doc. No. 24], Ex. 1 at 5.)[1] RBC is a subsidiary of non-party Royal Bank of Canada, which issued the RCNs. (Kaplan Aff., Ex. 1 at 2.)

**B. Underlying Factual Allegations**

At the heart of the Complaint is the allegation that RBC sold RCNs—complex structured securities that are "inherently risky"—to individuals who did not understand the nature of those investments, and who had previously indicated to RBC that they had a low tolerance for investment risk. (Compl. ¶¶ 1, 3-4.) Although the parties dispute the exact nature of RCNs, they are, at bottom, a form of bond, consisting of a high-yield, short-term note of the issuer that is linked to the performance of an unrelated reference asset—generally a stock or basket of stocks. (Compl., Ex. C at 2-3.) RCNs thus contain two components—a debt instrument paying an above market interest rate (occasionally as high as 30%), and a derivative, in the form of a put option, "that gives the issuer the right to repay principal to the investor in the form of a set amount of the underlying asset . . . if the price of the underlying asset dips below a predetermined price (often referred to as the 'knock-in' level)." (*Id.*) It is this underlying option that gives RCNs greater risk than a traditional bond, as an investor may ultimately lose all of his or her principal investment and be left with only a depreciated asset in return. (*Id.* at 3.) According to the Financial Industry Regulatory Authority ("FINRA"), the complex nature of RCNs can make them difficult to evaluate as an investment, and unsuitable for unsophisticated investors. (*Id.* at 2-3, 9-10.)

[1] All references to page numbers in this Opinion are those assigned by the CM/ECF system.

Because RCNs are so risky, Plaintiffs allege that RBC had a duty to only market them to investors who fully understood and accepted the risks involved. (Compl. ¶ 2.) In violation of this duty, however, the Complaint alleges that RBC engaged in a series of actions designed to hide the true risk of these products from investors, while pushing them on individuals who had expressly indicated an unwillingness to partake in options trading. (*See, e.g.*, *id.* at ¶¶ 106, 118.) Several specific allegations are illustrative, including that RBC: (1) "intentionally failed" to screen customers to make sure RCNs comported with their stated investment goals (*Id.* at ¶ 36); (2) knowingly mislabeled RCNs as "fixed-income investments" on account documents provided to investors (*Id.* at ¶¶ 51, 106); (3) omitted important information regarding the volatility of the stocks underlying the RCNs (*Id.* at ¶¶ 60, 61, 63); (4) failed to follow its internal guidelines for marketing RCNs (*Id.* at ¶¶ 67, 68); and (5) had been the subject of legal and regulatory action relating to the allegedly improper marketing of RCNs, notice of which it failed to provide to investors. (*Id.* at ¶¶ 7-12, 65, 115.) Plaintiffs allege that they relied on these and other misrepresentations and omissions in purchasing RCNs, and that, as a "direct and proximate result of RBC's actions, omissions, and misrepresentations, [they] suffered enormous financial losses." (*Id.* at ¶ 123.)

**C. Plaintiffs' Claims**

The Complaint asserts seven individual claims against RBC stemming from the alleged inappropriate marketing of RCNs, all of which are founded in state law. Four of the claims (Counts 1, 4, 5, and 7) allege fraud in some form, including common law fraud, fraudulent concealment, and violation of two provisions of the Minnesota

Securities Act (Minn. Stat. §§ 80A.68(1) and 80A.68(3)), which courts have recognized to be state-law analogues of SEC Rule 10b-5. *See Merry v. Prestige Capital Markets, Ltd.*, 944 F. Supp. 2d 702, 709 (D. Minn. 2013); *Minneapolis Emps. Ret. Fund v. Allison-Williams Co.*, 519 N.W.2d 176, 179 (Minn. 1994); 17 C.F.R. § 240.10b-5. The remaining claims (Counts 2, 3, and 6) are for common law negligence, breach of fiduciary duty, and breach of contract, respectively. With minor variations, the relevance of which will be discussed below, each of Plaintiffs' claims relies on the same set of allegations, including that RBC intentionally failed to follow customers' expressed instructions regarding investment risk, misrepresented the nature and safety of RCNs as investments, and omitted material information regarding legal and regulatory actions relating to RCNs. (*See* Compl. ¶¶ 95, 99, 103, 106, 108, 111, 115, 118-121.)

## III. DISCUSSION

### A. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is warranted where a plaintiff "fail[s] to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). Although the complaint need not contain "detailed factual allegations," it must plead facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quotations and citation omitted). Rather, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). While ordinarily only the facts alleged in the complaint are considered in deciding a motion to dismiss, "materials attached to the complaint as exhibits may be considered," *Morton*, 793 F.2d at 187, as well as "documents whose contents are alleged in [the] complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kusner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quotation and citation omitted).

**B. SLUSA**

As previously noted, RBC contends that Plaintiffs' Complaint must be dismissed for two independent reasons. The first raised is that the each of the claims asserted in the Complaint is barred by SLUSA, which precludes[2] maintenance—in either federal or state court—of any "covered class action" based on state law and alleging either (a) a "misrepresentation or omission of a material fact" in connection with the purchase or sale of a covered security, or (b) the use or employment of any "manipulative or deceptive device or contrivance" in connection with the purchase or sale of a covered security. *See*

[2] Although SLUSA is frequently referred to as a preemption statute, it is more properly labeled a preclusion statute, as it "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 637 n.1 (2006).

15 U.S.C. §§ 77p(b)-(c), 78bb)f(1)-(2). Proper application of SLUSA requires some understanding of its origins, which the Court will briefly recite here.

In the early 1990s, Congress became concerned with "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). In particular, legislative reports identified nuisance filings targeting "deep-pocketed defendants" in the financial industry as representing a serious threat to "the entire U.S. economy." *Id.* (quotation and citation omitted). The ability of these so-called "strike suits" to extract "extortionate settlements" on weak or non-existent facts under then-current pleading standards led to the passage in 1995 of the Private Securities Litigation Reform Act ("PSLRA"). *Id.*; *see also* 15 U.S.C. §§ 77z-1, 78u-4. That act dramatically narrowed the range of securities suits that could successfully survive a motion to dismiss by, among other things, introducing heightened pleading requirements for class actions alleging fraud in the sale of national securities. *See* 15 U.S.C. §§ 78u-4; *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001).

The PSLRA had an unintended effect however—while the act was successful in discouraging frivolous (and occasionally non-frivolous) securities fraud class actions in federal court, it also caused a rush of class action filings in state court, based on state law, in an attempt by the plaintiffs' bar to avoid the new restrictions entirely. *Dabit*, 547 U.S. at 82; *Lander*, 251 F.3d at 107. "To stem this shift from Federal to State courts, and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]," including its heightened pleading

standards, Congress enacted SLUSA in 1998. *Dabit*, 547 U.S. at 82 (quotations and citation omitted); *Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873, 876 (8th Cir. 2006).

In light of SLUSA's origin—as a law designed to prevent "end-running" the PSLRA—courts have interpreted its reach in an expansive fashion. The Supreme Court has declared that its passage reinforces Congress' resolve that "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Dabit*, 547 U.S. at 78. Likewise, the Eighth Circuit has noted that "SLUSA should be read with the 'presumption that Congress envisioned a broad construction,' so that the most troublesome class actions would be subject to the PSLRA's procedural reforms." *Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1127 (8th Cir. 2008) (quoting *Dabit*, 547 U.S. at 86). Thus, SLUSA has even been read to "pre-empt[] state-law class-action claims for which federal law provides no private remedy." *Dabit*, 547 U.S. at 74. Taken together, these and other cases suggest that courts should err on the side of finding in favor of preclusion under SLUSA when the issue is a close one.

The Eighth Circuit has developed a four-factor test for determining when a claim is precluded by SLUSA. Under this test, a party seeking to invoke SLUSA's application must show that: (1) the action is a "covered class action;" (2) the action purports to be based on state law; (3) the action alleges that the defendant misrepresented or omitted a material fact (or used or employed a manipulative or deceptive device or contrivance); and (4) the action alleges that the defendant's misrepresentations or omissions of material fact were made "in connection with the purchase or sale of a covered security." *See*

*Sofonia*, 465 F.3d at 876; *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002). Here, there is no real question that the first two factors are present. Under SLUSA, a "covered class action" is essentially any lawsuit "in which damages are sought on behalf of more than 50 people." *Dabit*, 547 U.S. at 83; *see also* 15 U.S.C. §§ 77p(f)(2)(A)(i)(I), 78bb(f)(5)(B)(i)(I). Plaintiffs' Complaint contends that the putative class may number "several thousand or more," and they seek damages on behalf of themselves and the putative class members. (*See* Compl. at 2, ¶¶ 82, 88.) Thus, Plaintiffs' action is a "covered class action" for SLUSA purposes. Likewise, because all seven individual claims brought by Plaintiffs sound in Minnesota statutory and common law, this action "purports to be based on state law."

The applicability of the second two factors of the SLUSA preclusion test presents thornier issues, however, and is vigorously contested by the parties. Accordingly, each will be addressed at length below.

**1. Plaintiffs' Complaint Generally Alleges Misrepresentations and Omissions of Material Fact by RBC**

As noted, SLUSA's third element generally requires that the action allege "false statements or omissions of material fact" made in connection with the purchase or sale of a covered security. *See Siepel v. Bank of Am., N.A.*, 239 F.R.D. 557, 567 (E.D. Mo. 2006) (citing *Dudek*, 295 F.3d at 879). In analyzing this requirement, courts in this circuit look to the "gravamen" of the Plaintiff's complaint. *See Dudek*, 295 F.3d at 879; *see also Black's Law Dictionary* (10th ed. 2014) (defining "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint"). Thus, the court does

not "rely on the names of the causes of action that the plaintiff alleges. Instead [it] look[s] at the substance of the allegations, based on a fair reading. SLUSA preemption is based on the conduct alleged, not the words used to describe the conduct." *Kutten v. Bank of Am., N.A.*, 530 F.3d 669, 670-71 (8th Cir. 2008).

Mindful of this instruction, courts in this circuit (as well as the Supreme Court), have unhesitatingly barred claims that are facially unrelated to misrepresentations—such as those for breach of contract, breach of fiduciary duty, and negligence—when, at bottom, the essence of the complaint was an allegation of fraud. *See, e.g.*, *Dabit*, 547 U.S. at 75 (finding breach of fiduciary duty and breach of covenant of good faith and fair dealing claims to be barred by SLUSA); *Kutten*, 530 F.3d at 670-71 (same, as to claims for breach of fiduciary duty, breach of contract, and violations of state investor protection statutes); *Prof'l Mgmt. Assocs., Inc. Emps.' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (same, as to claim for common law negligence).

Here, a fair reading of Plaintiffs' Complaint gives rise to the unavoidable conclusion that it is suffused with allegations of misrepresentations and omissions. Specifically, Plaintiffs repeatedly allege that RBC intentionally misrepresented the safety and appropriateness of RCNs as investment options (Compl. ¶¶ 36, 60, 61, 63), intentionally failed to notify prospective customers of various legal and regulatory actions RBC had been subject to regarding the sale of RCNs (*Id.* at ¶¶ 7-12, 65, 115), intentionally mislabeled RCNs as "fixed income" securities when they were not so (*Id.* at ¶¶ 51, 106), and failed to follow client instructions regarding risk tolerance and option trading in a manner that was "knowing," and done with intent to "defraud[]." Indeed,

there is no avoiding the fact that the majority of Plaintiffs' claims sound in fraud, thereby explicitly requiring allegations of material misrepresentations and omissions as essential elements of the causes of action. *See, e.g.*, *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986) (listing elements of a claim of common law fraud).

The fact that Plaintiffs also plead claims for common law negligence, breach of fiduciary duty, and breach of contract—claims that do not require proof of misrepresentation or omission as part of the cause of action—does not save either the Complaint generally or these claims individually. As previously noted, when measuring SLUSA's reach, courts are not constrained by the label given to the claim so long as the allegations themselves implicate misrepresentations or omissions. *See Kutten*, 530 F.3d 670-71; *Dudek*, 295 F.3d at 879. At bottom, these claims, like those directly asserting fraud, center in on RBC's alleged failures to follow client instructions, to make clients aware of material information, and to be truthful. (*See* Compl. ¶¶ 98, 103, 115.) Mere artful pleading cannot change this reality. Thus, for instance, rephrasing the duty to avoid material omissions as a breach of contract does not change the nature of the underlying wrong. *See, e.g.*, *Jaspers v. Prime Vest Fin. Servs., Inc.*, No. 10-cv-853 (DWF/RLE), 2010 WL 3463389, at *6 (D. Minn. Aug. 30, 2010) ("Whether couched as broken promises or as a different state-law cause of action, however, the heart of these allegations is a misrepresentation.").[3]

[3] Plaintiffs also cannot avoid the fact that each of their claims incorporates by reference all previous allegations—significantly impeding any attempt to cabin off their non-fraud claims. The Eighth Circuit has made clear that this fact is of more than passing importance: in *Prof'l Mgmt Assocs.*, the Court concluded that a claim of negligence

The Eighth Circuit's opinion in *Dudek* considered facts similar to those before the Court, making its holding particularly relevant. There, plaintiffs alleged that defendants had "affirmatively misl[ed] prospective customers into believing that deferred annuities m[ight] be appropriate investments for placement into qualified retirement plans, and fail[ed] to disclose the inappropriateness and unsuitability of such investments." 295 F.3d at 879. Although ultimately plaintiffs only asserted claims based on contract, quasi-contract, and fiduciary law, the court had little difficult in concluding that the "overall target" of the complaint remained "the unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts." *Id.* at 879-80. At bottom, the Eighth Circuit concluded that the gravamen of the complaint was tied to allegations "that defendants misstated or omitted material facts in connection with the purchase and sale of the tax-deferred annuities." *Id.* at 880. Accordingly, the court determined that the claims were barred by SLUSA. For the same reasons, this Court concludes that Plaintiffs' Complaint alleges that RBC misrepresented or omitted material facts,[4] and that SLUSA's third factor is met here.

---

containing "no [direct] allegation of a misrepresentation or omission" was nonetheless preempted by SLUSA, because the plaintiff's allegations regarding the defendant's misrepresentations were "incorporated by reference in the negligence count," thus making that claim "essentially a securities fraud claim." 335 F.3d at 803; *see also Jaspers*, 2010 WL 3463389, at *6 (noting that "[a]ll of Plaintiffs' allegations regarding Defendants' representations are incorporated by reference in the individual counts of the Complaint").

[4] Plaintiffs contend in their brief that to the extent fraudulent acts are alleged in the complaint, those acts "occurred *after* the purchase of the RCNs," and thus cannot be factored into the SLUSA analysis. (Pl.'s Resp in Opp to Def.'s Mot. to Dismiss [Doc.

### 2. RBC's Alleged Misrepresentations and Omissions were Made in Connection with the Purchase or Sale of a Covered Security

The fourth factor of the SLUSA test requires that the Complaint allege that the defendant's misrepresentations or omissions of material fact were made "in connection with the purchase or sale of a covered security." *Sofonia*, 465 F.3d at 876 (quotation and citation omitted). In its own right, this factor encompasses two sub-factors, commonly referred to as the "in connection with" prong, and the "covered security" prong. Because in this matter the parties primarily dispute the "covered security" prong, and because resolution of that issue heavily informs the Court's "in connection with" analysis, the Court will take the two sub-factors in reverse order, and begin with a consideration of whether the RCNs are "covered securities" for purposes of SLUSA.

SLUSA defines a "covered security" as a security that meets one of three requirements: (A) it may be one that is "listed, or authorized for listing" on certain national stock exchanges (e.g. the New York Stock Exchange or NASDAQ); (B) it may be listed on a national securities exchange that has listing standards that are "substantially similar" to the listing standards of one of the stock exchanges enumerated in subparagraph (A); or (C) it may be "a security of the same issuer that is equal in seniority

No. 32] ("Pl.'s Resp. in Opp."), at 32 (emphasis original).) This assertion finds no support in the text of the Complaint, and Plaintiffs provide no citations to defend it. Indeed, the Court notes that several allegations *directly contradict* this statement. (*See, e.g.*, Compl. ¶¶ 96 ("RBC's false representations related to the [RCNs] were material and susceptible of knowledge, which RBC possessed. Those representations induced Plaintiffs and members of the putative class to act *based on those representations*, i.e., purchasing [RCNs]."), 109 ("RBC's materially misleading conduct and omissions *caused* Plaintiffs to purchase the inherently risky [RCNs] . . . .) (emphasis added).) Thus, the Court need not address the legal effect—if any—of Plaintiffs' argument here.

or that is a senior security to a security described in subparagraph (A) or (B)." 15 U.S.C. § 77r(b)(1)(A)-(C).

In their briefing, Plaintiffs contend that there is no "covered security" here for purposes of SLUSA because, although the performance of an RCN is tied to the value of an underlying "reference stock," that stock itself is not part of the initial investment. (*See* Pl.'s Resp. in Opp. at 9.) Indeed, as Plaintiffs point out, the goal of investing in an RCN is to *avoid* taking possession of the reference stock—the purchaser is essentially betting that the knock-in level listed in the RCN will never be reached. (*Id.* at 18-19.) Although each Plaintiff in this case subsequently received possession of the reference stock when his or her RCN "knocked in," that event did not occur until well after the purchase of the RCN was completed. (*Id.* at 10.) Thus, even though the underlying reference stocks would qualify as covered securities under SLUSA, Plaintiffs contend that the RCNs themselves—which are indisputably not traded on a national exchange of any kind—do not. By Plaintiffs' reading of 15 U.S.C. § 77r(b)(1), therefore, SLUSA's fourth factor cannot be met here.

By way of response, RBC asserts that Plaintiffs have simply missed the relevant statutory provision that qualifies RCNs as "covered securities." While Plaintiffs look to the first two subparagraphs of § 77r(b)(1), RBC directs the Court to subparagraph (C), which declares a security to be "covered" if it is "a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B)." 15 U.S.C. § 77r(b)(1)(C). As RBC notes, RCNs are debt securities "issued" by Royal Bank of Canada (RBC's parent entity), and Royal Bank of Canada stock is

indisputably traded on a national stock exchange. (*See* Def.'s Reply Mem. in Supp. of Mot. to Dismiss [Doc. No. 36] ("Def.'s Reply Mem."), at 3.) Because the RCNs are "senior unsecured debt obligations" that "rank equally with all of [the issuer's] other unsecured and unsubordinated debt," they are, according to RBC, "covered securities" for purposes of SLUSA. (*Id.*)

Curiously, given that SLUSA has now been in force for nearly two decades, courts have almost never had cause to interpret the scope of subparagraph (C), and no federal court appears to have yet done so. For three primary reasons, however this Court agrees with RBC's application of that section here.

First, the starting point for any statutory analysis is the text of the statute itself. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003). As the Supreme Court has noted "time and again," courts must "presume that a legislature says in a statute what it means and means in a statute what it says there." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002) (quotation and citation omitted). Here, that presumption leads inevitably to the conclusion that RCNs are "covered securities." When broken down to its constituent parts, subparagraph (C) requires that four elements be met: there must be (1) a "security" of (2) the "same issuer" that is (3) at least equal in seniority to (4) a "security described in subparagraphs (A) or (B)." In this instance, the parties raise no dispute that RCNs are "securities" as defined by 15 U.S.C. § 77b(a)(1). Likewise, there is no dispute that they are issued by Royal Bank of Canada, the "same issuer" of a security described in subparagraph (A) of the statute. Finally, the prospectuses attached to Plaintiffs'

Complaint indicate clearly that the RCNs are of at least equal seniority to Royal Bank of Canada's common stock. Thus, every element of subparagraph (C) is met here.

Second, it is difficult to read subparagraph (C) in a way that at once excludes RCNs from the realm of "covered securities" but does not otherwise undercut that section as one of independent significance. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quotation and citation omitted); *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section . . . .") (quotation and citation omitted). At oral argument, Plaintiffs contended that the statutory text could be read to cover only "securities that are not fixed-rate debt instruments." (Hr'g Tr. [Doc. No. 40] at 15:4-5.) But nothing in the language of the text requires (or even suggests) such a reading, and Plaintiffs provided no authority for their conclusion.[5] In the Court's view, a more tenable alternative reading would be to conclude that subparagraph (C) only applies where the defendant was also the issuer of the covered securities, which is not the case here. But several courts, including the Supreme Court, have found that SLUSA precludes actions against non-issuers in the context of securities "covered" by subparagraphs (A) and (B), and the Court sees nothing

[5] At oral argument, Plaintiffs stated that their preferred reading of subparagraph (C) could be reached inferentially from the First Circuit's holding in *Hidalgo-Vélez v. San Juan Asset Mgmt., Inc.*, 758 F.3d 98 (1st Cir. 2014), but at no point does that case discuss subparagraph (C), nor does it go much farther in its analysis of the "covered security" prong than to note that the defendants "have not asserted" that the investments at issue were covered securities. 758 F.3d at 108.

in the statutory text that suggests subparagraph (C) should be treated differently. *See Dabit*, 547 U.S. at 71 (finding SLUSA precluded action against defendant non-issuer).

Third, what little case law that does exist applying subparagraph (C) supports RBC's interpretation. While apparently no federal court has yet considered that portion of the statute, at least two state courts have done so. First, in *BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co.*, 891 So. 2d. 310 (Ala. 2004), the Alabama Supreme Court noted that the plaintiff had conceded that the "high-yield subordinated notes" at issue in that case qualified as "covered securities" under subparagraph (C) because they were issued by a company that was listed on the NASDAQ stock exchange, and were senior to that company's stock. 891 So. 2d at 314. Of particular note, this case also involved a situation where the issuer of the covered securities was not a defendant in the underlying action. *Id.* at 312. Second, a California state district court concluded—in a prior litigation involving RBC's sale of RCNs—that RCNs were indeed covered securities for substantially the same reasons asserted by RBC in the present matter. (*See* Kaplan Aff., Ex. 6 (Tr. of Hr'g on Def.'s Mot. for Summ. J., *Wander v. RBC Wealth Mgm't*, Cal. Super. Ct. (May 30, 2012)) at 40.) Although Plaintiffs contend that the California decision should carry no weight with this Court because, among other things, counsel in that case failed to make an appearance at the summary judgment hearing, the matter was apparently briefed and the court rendered a reasoned decision. (*See* Goodwin Decl. [Doc No. 33], Ex. B at 3.)

Finally, and for reasons previously discussed, the Court concludes that RBC's interpretation of subparagraph (C) is in keeping both with the Congressional purpose in

enacting SLUSA, and with the broad scope given to its preclusive effect by the Supreme Court. *See, e.g.*, *Dabit*, 547 U.S. at 78; *Siepel*, 526 F.3d at 1127. Plaintiffs invite the Court to read SLUSA as meant to apply only where "nationally traded securities" are involved. (*See* Pl.'s Resp. in Opp. at 14.) But to do so would be to ignore both the text of the statute and the legislative history behind it. *See* H.R. Rep. No. 104-622, at 30 (noting that subparagraph (C) of 15 U.S.C. § 77r(b)(1) "is intended to afford to issuers of debt securities the *same benefits of preemption* as are enjoyed by issuers of equity securities.") (emphasis added). The Court will not artificially narrow the plain language of the statute.

For all of the above reasons, the Court concludes that RCNs qualify as "covered securities" for purposes of SLUSA.[6] It now turns to the last consideration of the SLUSA preclusion test: whether RBC's misrepresentations or omissions were made "in connection with" the purchase or sale of those covered securities. *Sofonia*, 465 F.3d at 876. That issue may be briefly disposed of.

As with the rest of the statute, courts have interpreted the "in connection with" requirement broadly. *See Siepel*, 526 F.3d at 1127 (declaring that the "in connection with" prong should be "construed flexibly, not technically or restrictively"); *Jaspers*, 2010 WL 3463389, at *7. Thus, the Supreme Court has made clear that all that need be alleged is that the defendant's misconduct "coincide" with a securities transaction. *Dabit*,

[6] Because the Court concludes that RCNs qualify as "covered securities" under 15 U.S.C. § 77r(b)(1)(C), it need not consider RBC's alternative argument that they also qualify under § 77r(b)(1)(A). (*See* Def.'s Mem. in Supp. of Mot. to Dismiss [Doc. No. 23] ("Def.'s Mem. in Supp.") at 18-19; Def.'s Reply Mem. at 5-6.)

545 U.S. at 85. More specifically, the Court has stated that "[a] fraudulent misrepresentation or omission is . . . made 'in connection with' such a 'purchase or sale of a covered security' [if] it is material to a decision by one or more individuals . . . to buy or sell a 'covered security.'" *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1066 (2014). Here, Plaintiffs' own allegations repeatedly state that RBC's misrepresentations and omissions directly induced their purchase of RCNs—a covered security. (*See* Compl. ¶¶ 96, 109, 112, 122, 123.) By any measure of strictness, therefore, let alone the "flexible" standard promulgated by the Supreme Court, RBC's alleged misdeeds were "in connection with" the purchase of covered securities.

## IV. CONCLUSION

In light of the above reasoning, the Court concludes that the claims alleged in Plaintiffs' Complaint are indeed precluded by SLUSA, and must be dismissed.[7] Accordingly, it declines to address RBC's alternate argument that Plaintiffs have failed to plead their claims with the requisite particularity. *See* Fed. R. Civ. P. 9(b). Because "ordinarily . . . dismissal [under SLUSA] should be without prejudice in order to allow the plaintiff to plead a claim sounding only in state law if possible," *Dabit v. Merrill*

[7] Both in their brief and by Notice of Supplemental Authority [Doc. No. 41], Plaintiffs advise the Court that the weight of authority supports finding that non-precluded claims survive a motion to dismiss on SLUSA grounds even where other claims are found precluded. *See, e.g.*, *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1228 (9th Cir. 2009); *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254-55 (3d Cir. 2009); *In re Kingate Mgmt. Ltd. Litig.*, No. 09-cv-5386 (DAB), 2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016). *But cf. Kutten v. Bank of Am., N.A.*, No. 06-0937 (PAM), 2007 WL 2485001, at *9 (E.D. Mo. Aug. 29, 2007); *Siepel*, 239 F.R.D. at 570 n.11. Because the Court finds here that all claims are independently preempted by SLUSA, however, these cases are not relevant to its analysis.

*Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 47 (2d Cir. 2005) (Sotomayor, J.), *rev'd on other grounds*, 547 U.S. at 71, the Court's decision is without prejudice.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss [Doc. No. 21] is **GRANTED** in part, and **DENIED** as moot in part; and

2. Plaintiffs' Complaint [Doc. No. 1] is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 13, 2016

s/Susan Richard Nelson________
SUSAN RICHARD NELSON
United States District Judge